UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AGIM MULOSMANAJ,                              :
                                             :
                        Petitioner,          :          **<u>MEMORANDUM & ORDER</u>**
                                             :
            v.                               :          06 Civ. 13515 (LBS)
                                             :
WILLIAM MAZZUCA, Superintendent of           :
Fishkill Correctional Facility,              :
                                             :
                        Respondent.          :
-------------------------------------------------------------------x

SAND, J.

     Petitioner Agim Mulosmanaj was convicted by a jury in the New York Supreme Court,

Bronx County on June 12, 2002 of Robbery in the Second Degree, PL § 160.10(3). He was

acquitted of Robbery in the First Degree.  Petitioner was sentenced as a repeat felony offender to

a term of seven years in prison, with five years of supervised release.  The Appellate Division

affirmed the conviction and the New York Court of Appeals denied leave to appeal.  <u>People v.</u>

<u>Mulosmanaj</u>, 14 A.D.3d 389 (1st Dept. 2005), <u>lv. denied</u>, 4 N.Y.3d 855 (2005).  Petitioner also

moved *pro se* to vacate his judgment of conviction on the ground that he did not receive effective

assistance of counsel at trial.  This motion was denied, and Petitioner's application for leave to

appeal was also denied.  (Resp. Br. Ex. 9, 11).  Petitioner brings the instant petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 (2000).  For the reasons stated below, this petition is

denied.


                                             I.

     Petitioner was arrested on October 25, 2001.  Petitioner's version of the events preceding

his arrest differs somewhat from the prosecution's.  The prosecution presented evidence that on

the morning of October 25, petitioner hailed a livery cab driven by Milton Valenzuela. Petitioner instructed Mr. Valenzuela to make two right turns, and then pulled out a black revolver. Petitioner told Mr. Valenzuela to raise his hands, and then told him to lower them when some passers-by asked Mr. Valenzuela what was happening.  Mr. Valenzuela replied that nothing was going on.  Petitioner then told Mr. Valenzuela to put his money and wallet on the armrest and to get out of the cab, and Mr. Valenzuela complied.   After getting out, Mr. Valenzuela ran away from the car and saw petitioner get into the driver's seat.  That night, Police Officer Wilson Hernandez was on bicycle patrol when he was waved down by several people at 201st Street.  They informed him of a "car jacking," and he found Mr. Valenzuela's black Lincoln Continental parked legally on 201st Street.  Mr. Valenzuela's Medicaid card was in the car, but two radios, compact discs, a compact disc player, and Mr. Valenzuela's wallet were missing.  Detective Ismael Hernandez circulated a picture of petitioner taken from the livery cab's camera throughout the Bronx precincts and detective units, and petitioner was arrested. Petitioner was subsequently identified by Mr. Valenzuela in a line-up.

Petitioner, on the other hand, claims that he was waiting for a private cab to pick him up, so that he could buy heroin to alleviate the pain from a nerve condition, when Mr. Valenzuela approached him in his livery cab and asked him to get in.  After refusing twice, petitioner got into the cab and gave Mr. Valenzuela his destination.  According to petitioner, Mr. Valenzuela refused to take him to the destination, and then stopped the cab and got out, leaving the keys inside the car.  Petitioner testified that he asked Mr. Valenzuela again to take him to the destination, but when Mr. Valenzuela refused, petitioner got into the driver's set and closed the door.  He told Mr. Valenzuela that he would call him when he dropped the car off someplace in the Bronx, and Mr. Valenzuela agreed.  Petitioner drove the car to his destination, where he

purchased heroin, and then parked the car on 201st Street.  Petitioner testified that he called the cab company after leaving the car.

After trial, the jury acquitted petitioner of robbery in the first degree, but convicted him of robbery in the second degree.


## II.

The petition before the Court raises two grounds for relief.  Petitioner first argues that the evidence presented at trial was legally insufficient to support his conviction.  Second, petitioner argues that he was deprived of effective assistance of counsel before and during his trial.


## A. SUFFICIENCY OF THE EVIDENCE CLAIM

Petitioner alleges that no rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the testimony of witnesses in his case.  "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[1] Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt," Woodby v. INS, 385 U.S. 276, 282 (1966), but rather to ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Johnson v. Louisiana, 406 U.S. 356, 362 (1972).

---

[1] Petitioner contends that "the erroneous [robbery] charge could have contributed to the verdict."  (Pet. Mem. at 12). As the case law makes clear, this argument is irrelevant to petitioner's sufficiency of the evidence claim.

Petitioner contends that no rational jury could have found that he intended to permanently take the livery cab, an element of the crime of robbery in the second degree. Petitioner bases this claim on the fact that he testified that he intended to "borrow" the car, and that he called the cab company to tell them where the car was located once he had used it. However, petitioner's assertion that he intended only to take the car temporarily does not prevent a reasonable jury from finding that he intended to appropriate the car permanently. A rational jury is not required to believe self-serving testimony from a defendant. During petitioner's trial, Mr. Valenzuela testified that he was afraid for his life, and that petitioner had demanded that he place his money and wallet on the armrest and leave the cab. It seems clear that a reasonable jury could have found that petitioner's intent during the robbery was to take the car permanently, and that he later changed his mind and abandoned it.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground, petitioner claims that he was deprived of his right to the effective assistance of counsel during pre-trial and trial for four reasons: (1) counsel failed to communicate adequately with petitioner and investigate the case prior to trial; (2) counsel rejected a plea offer by the State for participation in a drug treatment program in lieu of or for a reduction of sentence without conferring with petitioner; (3) counsel failed to investigate petitioner's contention that the individual who testified at trial was not the same individual who was driving the cab that petitioner took; and (4) counsel failed to object to the robbery jury charge.

A federal habeas court may grant the writ only if the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

4

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

The Supreme Court set out the test for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a Sixth Amendment claim, petitioner must show that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 694, 689. A reviewing court should "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

1. Counsel's Failure to Communicate with Petitioner and Investigate the Case

Petitioner claims that counsel visited him once prior to trial and sent an investigator to interview him twice at Riker's Island, and that this demonstrated a failure to communicate adequately before trial. (Pet. Mem. at 5; Resp. Mem. Ex. 5). But petitioner does not explain why more frequent visits were required, or how his defense would have been different with additional communication. Petitioner's only attempt at identifying information which might have changed the outcome is insufficient. Petitioner's only specific claim of counsel's pretrial ineffectiveness involved counsel's failure to request additional photographs taken with the taxi's camera. Plaintiff contends that there "should have been approximately 30 photographs" and that some of

the photographs which were not turned over to the defense "could have been exculpatory." (Pet. Mem. at 16). This assertion will not suffice to demonstrate ineffective assistance of counsel. Counsel used the nine photographs that were turned over to demonstrate that both of petitioner's hands were visible, and that there was no gun in either hand, and, indeed, the jury acquitted petitioner of possessing a gun. The nine photographs that were turned over clearly identify petitioner as the sole passenger in the cab. It cannot be said that counsel's failure to request the additional 21 photographs, assuming that these photographs even exist, would fall below an objective standard of reasonableness under prevailing professional norms. Furthermore, petitioner does not specify what type of photograph "could have been" exculpatory. Since petitioner cannot articulate how these additional photos could have altered the outcome of the trial, there is no "reasonable probability that … the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

2. Counsel's Alleged Rejection of a Plea Offer for Drug Treatment Without Petitioner's Consent

Petitioner also contends that defense counsel rejected a plea offer for a drug treatment program in lieu of incarceration or for a reduced sentence. Petitioner alleges that counsel told his sister, Myruete Haxhijaj, that petitioner had refused to enter a drug program. Petitioner alleges that he called Counsel to ask why the plea was rejected, and counsel's response was "trust me, the drug program is not for you." (Resp. Mem., Ex. 5). But there is no information on the record that supports petitioner's assertion that counsel was ever actually offered this plea, much less that it was offered and rejected. The Plea Board Sheet reveals that the pre-indictment offer was a class C felony and eight years of incarceration, and the status sheet for the March 14, 2002 court date indicates that the prosecutor's best offer was a Class B violent felony offense with fifteen

years of incarceration.  Moreover, in the State's opposition to petitioner's § 440 proceeding, ADA Tracy Silligmueller indicated that she had spoken with the prosecutor from petitioner's trial, and that petitioner "was never offered a drug program."  Defense counsel's affidavit contains the same recollection: that petitioner's alleged drug treatment plea was never actually offered, and that the plea offered was fifteen years of incarceration.

"A petition for habeas corpus relief requires an evidentiary hearing to resolve disputed issues of fact unless the record shows that the petitioner is not entitled to relief." Ortega v. United States, 897 F. Supp. 771, 782 (S.D.N.Y. 1995).  In determining whether an issue of fact exists, the courts cannot consider evidence which would be inadmissible at a formal hearing, such as hearsay.  Hayden v. United States, 814 F.2d 888, 891 (2d Cir. 1987) ("We have consistently held that the standard … is whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief. Mere generalities or hearsay statements will not normally entitle the applicant to a hearing") (internal quotation marks omitted).  Petitioner's assertion that counsel told his sister that he had rejected the drug treatment program is hearsay, as is petitioner's alleged conversation with counsel about the plea rejection. (Resp. Ex. 5).  The Second Circuit has noted that "[a] standard that would entitle a petitioner, based solely on hearsay information … to a full evidentiary hearing … would too easily lend itself to abuse, because such hearsay is too easily manufactured." Hayden, 814 F.2d 888, 892 (2d Cir. 1987).

"[A] judge is well within his discretion in denying a petition when the supporting affidavit is insufficient on its face to warrant a hearing." Dalli v. United States, 491 F.2d 758 (2d Cir. 1974).  Further, although opposing affidavits from the government cannot be deemed part of the "records and files" of a case to show that the petitioner is entitled to no relief under 28

U.S.C. § 2255, "they may be considered in assessing the sufficiency of the petitioner's supporting affidavit."  Id.  Because evidence on the record refutes petitioner's claim that counsel refused a drug treatment program, and because petitioner's only assertions about the plea offer are inadmissible hearsay, an evidentiary hearing is not necessary.  Counsel cannot be considered ineffective on this ground.

3.  Counsel's Failure to Investigate Petitioner's Claim that Mr. Valenzuela Was Not the Actual Cab Driver

Petitioner alleges that when Mr. Valenzuela, the complainant, took the stand during his trial, petitioner immediately told his attorney that the person testifying was not the same driver from whom he had taken the car. (Pet. Mem. at 19).  However, Mr. Valenzuela identified petitioner at a lineup after he was arrested, and Mr. Valenzuela's Medicaid card was found in the cab after it had been recovered.  Counsel's failure to "investigate" petitioner's claim that Mr. Valenzuela was not really the cab driver cannot be considered unreasonable "under prevailing professional norms."  Strickland, 466 U.S. at 688.  Indeed, the Supreme Court has noted that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Darden v. Wainwright, 477 U.S. 168, 185-186 (1986).  Counsel's failure to pursue petitioner's contention that Mr. Valenzuela was not the same cab driver (despite evidence to the contrary) is certainly a "sound trial strategy."  Petitioner's claim for ineffective assistance of counsel fails on this ground as well.

4. Counsel's Failure to Object to the Robbery Jury Charge

Petitioner's final claim for ineffective assistance of counsel is based on counsel's failure to object to the charge that the jury was given for the crime of robbery.  Petitioner raised the issue of the flawed jury charge in his direct appeal of his conviction, and the Appellate Division noted:

> Were we to review this claim, we would find that the court's charge, read as a whole, clearly apprised the jury that robbery required an intent to permanently deprive the victim of property, in that the court defined robbery as necessarily incorporating larceny, and ultimately defined larceny with explicit reference to the definitions of 'deprive' and 'appropriate' set for the in Penal Law.

People v. Mulosmanaj, 14 A.D.3d 389, 389 (1st Dept. 2005) (internal quotation marks omitted). The trial court's analysis cannot be considered an "unreasonable application of federal law," and therefore is entitled to deference under the Anti-Terrorism and Effective Death Penalty Act. Consequently, the charge cannot be considered deficient, and counsel cannot be found to be ineffective for failing to object to it.  See United States v. Frampton, 382 F.3d 213, 222 n.8 (2d Cir. 2004) ("Having found no error in [the district court's] instruction, we hold [defendant's] claim [of ineffective assistance] must fail."); United States v. Cohen, 427 F.3d 164, 172 (2d Cir. 2005)  ("Absent actual error … trial counsel's failure to object to the jury charge did not constitute ineffective assistance of counsel"); United States v. Brooks, 82 F.3d 50, 53 (2d Cir. 1996) (holding that counsel was not ineffective for failing to object to a proper conspiracy charge).  Thus, petitioner's ineffectiveness claim fails on this ground as well.

III.

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.

Because petitioner has not "made a substantial showing of the denial of a constitutional right,"

28 U.S.C. § 2253(c)(2) (2000),  a certificate of appealability shall not issue.

**SO ORDERED.**

Dated:  September __, 2007
         New York, NY

_____
U.S.D.J.